**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ARREN DODSON<br>502 Foxhall Place, S.E.<br>Washington, D.C. 20032<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CAPITOL POLICE<br>119 D Street, N.E.<br>Washington DC 20510<br><br>Defendant.<br><br>Serve:<br><br>UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA<br>Attn: Civil Process Clerk<br>United States Attorney's Office<br>555 Fourth Street, N.W.<br>Washington, D.C. 20530<br>-*Via Certified Mail*<br><br>UNITED STATES ATTORNEY GENERAL<br>Tenth & Pennsylvania Avenues, N.W.<br>Washington, D.C. 20530<br>-*Via Certified Mail*<br><br>UNITED STATES CAPITOL POLICE<br>119 D Street, N.E.<br>Washington, D.C. 20510<br>-*Via Certified Mail* | ) | Civil Action No. ________________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

1. Plaintiff Arren Dodson ("Plaintiff" or "Dodson") brings this complaint of employment discrimination on the basis of race and retaliation and violation of his

Constitutional right to Due Process against Defendant United States Capitol Police ("Defendant" or "USCP")

2. The acts complained of violate the Fifth Amendment to the United States Constitution and the Congressional Accountability Act of 1995, 2 U.S.C. § 1301, *et seq.*, which incorporates by reference and makes applicable to victims of race discrimination and related reprisal the rights and remedies of Title VII of the Civil Rights Act of 1964, as amended, § 7, 42 U.S.C. § 2000e, *et seq.*

3. Plaintiff seeks (1) declaratory, (2) injunctive, and (3) make-whole relief based on the discriminatory and retaliatory conduct to which he has been subjected by Defendant; (4) compensatory damages, and (5) reasonable attorney's fees and other legal costs.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over this action pursuant to the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. § 1408, and 28 U.S.C. § 1331.

5. The Court has jurisdiction of all counts in this action by virtue of Section 408 of the CAA, 2 U.S.C. § 1408.

6. Section 201 of the CAA, 2 U.S.C. §1311, incorporates by reference and makes applicable to victims of race discrimination, and related reprisals/retaliations, who are covered by the CAA, the rights and remedies of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and of 42 U.S.C. §1981(a).

7. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b), as the incidents that give rise to this action occurred in the District of Columbia where Plaintiff was employed full time by Defendant USCP.

8. Plaintiff completed counseling and mediation as required by 2 U.S.C. §§ 1402

and 1403 and received notice that mediation ended on September 14, 2018. A copy of this notice is attached hereto as **Exhibit A**.

**PARTIES**

9. Plaintiff is an African American.

10. At all times material to this Complaint, Plaintiff was employed as a sworn officer of the Defendant USCP.

11. At all times material to this Complaint, Defendant USCP was a federal government agency with its headquarters located at 119 D Street, N.E., Washington, DC 20510.

12. At all times material to this Complaint, Defendant USCP was an employer for purposes of Title VII of the Civil Rights Act of 1964, as applied by the CAA, 2 U.S.C. § 1301.

**FACTS**

13. Defendant has discriminated against Plaintiff in the past during his tenure at the Department.

14. Plaintiff's supervisors, including but not limited to Sergeant Jason Brown, and Lieutenant Richard Bodziony (who are both Caucasian), have engaged in severe and pervasive harassment of Plaintiff, including harassing supervision and unduly harsh discipline, to which they did not subject Plaintiff's Caucasian colleagues to similar conduct.

15. Plaintiff regularly spoke out about the Department treating him less favorably than his Caucasian colleagues.

16. Most recently, USCP terminated Plaintiff for allegedly violating a Last Chance Agreement ("LCA") for conduct that went unpunished by USCP's Caucasian employees.

17. Plaintiff's Last Chance Agreement ("LCA"), effective June 28, 2016, provides,

in pertinent part: "Officer Dodson agrees that any future sustained CP-535 discipline approved by the Chief of Police or his designee which results in a suspension without pay during a five (5) year period from the date of this LCA, will result in termination of his employment for the prior misconduct sustained in [this discipline], as a violation of this LCA."

18. On April 30, 2018, Defendant USCP issued two disciplinary actions to Plaintiff, the first recommending a two-day suspension, and the second recommending termination.

19. Defendant USCP issued a two-day suspension to Plaintiff for allegedly violating USCP Directive No. 2053.013: Rules of Conduct, Category A: Duty to Obey, Rule A6: Insubordination on January 18, 2018, when he left work after being notified that he had been drafted for the next shift and ordered to remain on duty.

20. Defendant subjected Plaintiff to termination for allegedly violating USCP Directive No. 2053.013: Rules of Conduct, Category B: Performance of Duty, Rule B1: Unsatisfactory Performance when he took sick leave between January 17, 2018 and January 24, 2018 (which included a government shutdown due to a lapse in appropriations[1]) and failed to provide sufficient medical documentation of his absence.

21. On January 17, 2018, Plaintiff was ill, but believed he could work his assigned shift. He reported for duty because he was not on the list of employees who might be ordered to work additional duty (the "unscheduled draft list") for that date. Near the end of his shift, on January 18, 2018, the Department informed him that he would be required to work additional duty into the next shift.

22. Knowing that he was very low on the unscheduled draft list, Plaintiff asked

[1] The government shutdown extended from January 20 through 22, 2018.

why he was being required to work additional duty and learned that all of the employees who had been scheduled to work additional duty for that date went home with no negative consequence. Plaintiff explained to his supervisor that he had an ear infection and a migraine and was unable to continue working.

23. Lieutenant Bodziony – who had permitted employees higher on the unscheduled draft list to leave – ignored Plaintiff's assertions that he was not fit to complete another shift, resulting in the improper order that he remain on-duty, even though he had properly notified management of his illness.

24. Unable to complete his shift, Plaintiff went home and to the doctor. In addition to his migraine, Plaintiff's doctor determined he had an ear infection in both ears and gave him a course of antibiotics.

25. The doctor informed Plaintiff that ear infections typically take seven to ten days to heal, and that he should follow-up with his primary care physician.

26. The doctor provided Plaintiff with a note permitting him to return to work as soon as January 19, 2018, *only if he was feeling better*, and seven to ten days later if he was not.

27. Plaintiff was not feeling better when it was time to report for his next tour of duty and remained on sick leave.

28. Plaintiff did not receive any instruction from the Department that he should report for duty due to the government shutdown and returned to work on January 24, 2018.

29. Plaintiff provided the doctor's note to Sergeant Brown and explained that the doctor informed him that he may be unable to work for seven to ten days after the appointment.

30. Sergeant Brown rejected the note as "insufficient," and would not explain to Plaintiff why it was insufficient, despite Plaintiff's multiple inquiries.

31. Plaintiff brought Sergeant Brown a second doctor's note, which the supervisor also rejected as insufficient, again without explaining how to properly document his use of sick leave for the double ear infection and migraine.

32. At no time did Defendant or any of its employees explain to Plaintiff how to properly document his sick leave.

33. Past practice at USCP has been to provide a doctor's note that outlines for how long an employee should take sick leave.

34. At the same time the Department issued the discipline, it informed Plaintiff: "As you know, under the terms of the June 28, 2016 Last Chance Agreement ("LCA") entered into by you and the Department, your receipt of any sustained CP-535 discipline is a violation of the LCA that will result in the termination of your employment, and you are not entitled to an appeal, grievance or any other challenge of the recommended termination."

35. The Department did not provide Plaintiff with information supporting its decision or an opportunity for a hearing, as required by the Collective Bargaining Agreement that governed his terms and conditions of employment, to challenge either proposed disciplinary action.

36. On May 4, 2018, Plaintiff presented additional information that he believed was relevant to the disciplinary actions to Chief of Police Matthew Verderosa, but it was rejected.

37. On May 9, 2018, USCP Chief Verderosa informed Plaintiff that he had accepted the recommendation that Plaintiff's employment be terminated and would forward his recommendation to the USCP Board for its approval in five (5) business days if Plaintiff

did not resign.

38. Chief Verderosa did not detail what information he considered in upholding the recommendation to terminate Plaintiff, nor did he explain what information would be provided to the USCP Board.

39. Plaintiff elected not to resign.

40. On July 2, 2018, USCP notified Plaintiff that he had been terminated from his Department employment effective on June 26, 2018.

**COUNT I – RACE DISCRIMINATION**

41. Plaintiff adopts and incorporates by reference the preceding paragraphs as if fully set forth herein.

42. Defendant unlawfully discriminated against Plaintiff because of his race.

43. The CAA, 2 U.S.C. § 1311, *et seq.*, which incorporates by reference and applies Title VII of the Civil Rights Act of 1964, as amended, §7, 42 U.S.C. § 2000e, *et seq.*, makes it unlawful for an employer to discriminate in employment against any individual with respect to compensation, terms, conditions, or privileges of employment because of race.

44. Defendant unlawfully discriminated against Plaintiff on the basis of his race (African American), when it subjected Plaintiff to disparate treatment as compared to similarly situated Caucasian employees.

45. Defendant unlawfully discriminated against Plaintiff when it disciplined him (including termination) for conduct that is not similarly disciplined when committed by his Caucasian colleagues.

46. As a result of Defendant's violations of the CAA and Title VII, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, loss of rank and/or

compensation, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

**COUNT II – RETALIATION**

47. Plaintiff adopts and incorporates by reference the preceding paragraphs as if fully set forth herein.

48. Defendant retaliated against Plaintiff on the basis of his protected activity and opposition to disparate treatment.

49. The CAA, 2 U.S.C. § 1311, *et seq.*, which incorporates by reference and applies Title VII of the Civil Rights Act of 1964, as amended, §7, 42 U.S.C. § 2000e, *et seq.*, makes it unlawful for an employer to retaliate against an employee for engaging in protected activity by opposing disparate treatment.

50. Plaintiff engaged in protected activity when he questioned why the Department ordered him to work an additional shift after Plaintiff informed him that he was unable to perform his duties.

51. Plaintiff engaged in protected activity when he questioned Sergeant Brown as to why he would not accept his doctor's note in accordance with past practice and when he asked Sergeant Brown how to properly document his sick leave.

52. Defendant unlawfully retaliated against Plaintiff when it disciplined Plaintiff for alleged insubordination for asking why he was being drafted to work when he was sick.

53. Defendant unlawfully retaliated against Plaintiff when it terminated Plaintiff for alleged unsatisfactory performance when he questioned why his doctor's note was insufficient.

54. As a result of Defendant's violations of the CAA and Title VII, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, loss of rank and/or

compensation, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

**COUNT III – VIOLATION OF CONSTITUTIONAL DUE PROCESS**

55. Plaintiff adopts and incorporates by reference the preceding paragraphs as if fully set forth herein.

56. At the time of his termination, Plaintiff had a constitutionally protected property and liberty interest in his employment.

57. Even though there was not lawful cause to dismiss Plaintiff, his job termination was summary and without the procedural and substantive process due to him.

58. The manner in which Plaintiff was terminated – without notice or opportunity to be heard -- stigmatized him and damaged his reputation and foreclosed him from taking advantage of future employment opportunities.

59. Defendant's actions are legally irrational because they are not keyed to any legitimate state or government interest.

60. As a direct and proximate cause of the defendant's actions, Plaintiff lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, and damage to his employment and personal reputation.

61. Defendant acted maliciously, willfully, wantonly, and with reckless disregard of Plaintiff constitutional rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court issue judgment granting the following relief from USCP:

a. A declaratory judgment that Defendant has discriminated against Plaintiff as

alleged herein, in violation of the Congressional Accountability Act and Title VII of the Civil Rights Act, which it applies;

b. An injunctive order requiring Defendant to take specific corrective action, including rescission of Plaintiff's termination and reinstatement with back pay, and that it take appropriate steps to protect plaintiff from further acts of discrimination and retaliation in the future;

c. Find that Defendant violated Plaintiff rights to due process under the Fifth Amendment of the United States Constitution;

d. Monetary and/or compensatory damages to the maximum extent allowed by law;

e. Reasonable attorneys' fees and the costs and expenses of bringing this action

f. Such other relief that is just and proper, including any pre- and post-judgment interest due; and

g. All other relief to which Plaintiff is entitled to at law or in equity.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for any and all issues proper to be so tried in this action.

Dated: November 19, 2018

Respectfully submitted,

/s/ *Megan K. Mechak*

Megan K. Mechak, D.C. Bar No. 986687
Hillary D. LeBeau, D.C. Bar No. 155337
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
(202) 833-8855
(202) 452-1090 (Facsimile)
mkm@wmlaborlaw.com
hl@wmlaborlaw.com

*Counsel for Plaintiff Arren Dodson*